# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**SCOTT P. ROEDER,**

        **Petitioner,**

        **v.**                                               **Case No. 20-3275-JAR**

**DAN SCHNURR,**

        **Respondent.**

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Scott Roeder's Petition for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1), seeking federal habeas relief from a state conviction under 28 U.S.C. § 2254. Petitioner, who proceeds *pro se*, seeks relief on the basis that he was denied the right to counsel and to be present at his first appearance, and that he received ineffective assistance of counsel at trial and on appeal. Petitioner also seeks a "stay of execution" on behalf of "unborn and partially born individuals under sentence of death." Respondent Dan Schnurr filed an Answer and Return;[1] Petitioner filed a Reply[2] and Notice of Intervening Matter.[3] The petition is therefore fully briefed, and the Court is prepared to rule. After a careful review of the record and the arguments presented, the Court denies the petition.

## I.    Legal Standard

The Court reviews Petitioner's challenges to state court proceedings pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA").[4] AEDPA "requires federal courts to

---

[1] Doc. 27.

[2] Doc. 33.

[3] Doc. 36.

[4] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013). Petitioner raises constitutional challenges to AEDPA, arguing that it gives too much deference to the state courts. AEDPA is binding on this Court, however,

give significant deference to state court decisions" adjudicated on the merits.[5]  Under 28 U.S.C.

§ 2254(d), a federal court may only grant habeas relief on a claim adjudicated on the merits in

state court if a petitioner shows "that the state court decision was 'contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States,' or 'was based on an unreasonable determination of facts in light of

the evidence presented in the State court proceeding.'"[6]

A state court decision is "contrary to" an established federal law if "the state court applies

a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case

differently than [the Supreme Court has] done on a set of materially indistinguishable facts."[7]  A

decision is an "unreasonable application" of clearly established federal law "if the state court

correctly identifies the governing legal principle from [the Supreme Court's] decisions but

unreasonably applies it to the facts of a particular case."[8]  Additionally, "an unreasonable

application may occur if the state court either unreasonably extends, or unreasonably refuses to

extend, a legal principle from Supreme Court precedent to a new context where it should

apply."[9]  Courts employ an objective standard in determining what is unreasonable.[10]

A federal court must presume a state court's factual findings, including credibility

---

and the Supreme Court has held that AEDPA does not require the federal courts to cede their Article III authority to the states.  *Williams v. Taylor*, 529 U.S. 362, 389 (2000) ("In sum, the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law.  If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody—or, as in this case, his sentence of death—violates the Constitution, that independent judgment should prevail.").

[5] *Lockett*, 711 F.3d at 1230 (citation omitted).

[6] *Williams v. Trammel*, 782 F.3d 1184, 1191 (10th Cir. 2015) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

[7] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 405–06).

[8] *Id.* (citing *Williams*, 529 U.S. at 407–08).

[9] *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (citation omitted).

[10] *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 409–10).

findings, are correct, in the absence of clear and convincing evidence to the contrary.[11]  The law "stops just 'short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'"[12]  Courts may not issue a writ of habeas corpus if "'fairminded jurists could disagree' on the correctness of [the state court's] decision."[13]  The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[14]

Because Petitioner proceeds pro se, the Court must construe his pleadings liberally and apply a less stringent standard than what is applicable to attorneys.[15]  However, the Court may not provide "additional factual allegations to round out a [petitioner's] complaint or construct a legal theory on a [petitioner's] behalf."[16]  The Court need only accept as true Petitioner's "well-pleaded factual contentions, not his conclusory allegations."[17]

## II.     Factual and Procedural Background

Absent clear and convincing evidence to the contrary, a federal habeas court must presume that the state court's factual findings are correct.[18]  The facts underlying Petitioner's convictions for murder in the first degree and aggravated assault, as stated by the Kansas Supreme Court on direct appeal are as follows:

> On May 31, 2009, Scott Roeder executed his years-old plan to kill Dr. George Tiller to prevent the Wichita, Kansas, doctor from

---

[11] 28 U.S.C. § 2254(e)(1).

[12] *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

[13] *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[14] *Id.* at 102 (citation omitted).

[15] *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[16] *Whitney*, 113 F.3d at 1174 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[17] *Hall*, 935 F.2d at 1110.

[18] 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

> performing any further abortions. After fatally shooting the doctor
> from point blank range during church services while the doctor
> served as an usher, Roeder hastily fled the premises.  During his
> getaway, Roeder threatened to shoot two other ushers who had
> pursued him outside the church.  Roeder did not deny committing
> the physical acts underlying a premeditated first-degree murder
> charge and two counts of aggravated assault, and the jury
> convicted him of those offenses.
>
> . . . .
>
> [Petitioner] did not deny that he intentionally shot Dr. Tiller in the
> head with the premeditated intent to kill him or that he
> intentionally threatened to shoot the two ushers to prevent their
> pursuit as he ran away from the church, a good deal of the
> evidence at trial dealt with Roeder's religious beliefs and their
> manifestation into his perceived need to kill Dr. Tiller. [19]

Petitioner was initially sentenced to a term of life imprisonment with no possibility of parole for

50 years.  On October 24, 2014, the Kansas Supreme Court affirmed the convictions on direct

appeal, but reversed the sentence and remanded for resentencing.[20]  On remand, Petitioner was

resentenced to a term of life imprisonment with no possibility of parole for 25 years.

On October 16, 2018, Petitioner filed a motion for post-conviction relief under K.S.A. §

60-1507 in Sedgwick County District Court.  The district court denied his motion.  In his

postconviction appeal, Petitioner raised the following issues:

> (1) His statutory and constitutional rights were violated because he
> was not present in person and did not have counsel at his first
> appearance; (2) his trial counsel was ineffective for failing to call a
> coroner as a witness to prove that abortion was a legal harm or
> evil; (3) his appellate counsel was ineffective for failing to ask the
> Kansas Supreme Court to adopt the definition of "imminence" as
> set forth in a 2010 U.S. Justice Department memorandum; (4) his
> appellate counsel was ineffective for failing to effectively answer
> certain questions during oral argument; and (5) the district court

---

[19] *State v. Roeder* (*Roeder I*), 336 P.3d 831, 837–38 (Kan. 2014).

[20] *Id.* at 859.

> erred by dismissing his emergency motion to protect unborn
> individuals as an abuse of process.[21]

On July 19, 2019, the Kansas Court of Appeals ("KCOA") affirmed the district court's denial of

both Petitioner's habeas motion, and his separate emergency motion to protect unborn

individuals.[22]  The Kansas Supreme Court denied review, and the United States Supreme Court

denied his Petition for Writ of Certiorari.

## III.   Discussion

In this federal petition for writ of habeas corpus, Petitioner raises the following claims:

(1) his twin rights to be present and have counsel were violated when he appeared by video at his

first appearance without counsel; (2) his trial counsel was ineffective for failing to call a coroner

as an expert witness to testify that abortion is homicide; (3) his appellate counsel was ineffective

for conceding that six months is not "imminent" in the context of pursuing a necessity defense

and jury instruction on the lesser included offense of voluntary manslaughter; (4) his trial

counsel was ineffective for agreeing that the public need not be present during jury selection; and

(5) he should be permitted as next friend to seek a stay of execution on behalf of unborn and

partially unborn individuals under sentence of death.  First, the Court addresses whether these

last two claims are procedurally barred, as urged by Respondent.  Then, the Court turns to the

merits of the remaining claims.

### A.   Procedural Bar

Respondent argues that two of the issues raised by Petitioner are procedurally barred: his

claim for ineffective assistance of counsel based on his trial attorney's decision not to challenge

---

[21] *Roeder v. State* (*Roeder II*), 444 P.3d 379 (Table), 2019 WL 3242198, at *2 (Kan. Ct. App. July 19, 2019).  These five issues included issues raised in Petitioner's supplemental pro se brief to the court.  *Id.*

[22] *Id.* at *1.

nonpublic jury selection, and his claim that the state court erred when it failed to allow him to represent the interests of others in conjunction with his habeas motion.

A federal court may not grant a writ of habeas corpus unless, pursuant to 28 U.S.C. § 2254(b)(1), the petitioner has exhausted all available state court remedies.[23]  Under the exhaustion doctrine, a petitioner "must give state courts 'one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'"[24]  Therefore, "any claims not included in a petition for discretionary review are unexhausted."[25]

Sometimes, prisoners fail to comply with state court procedures, or fail to raise their federal claims in state court at all.[26]  Under a "corollary" to the exhaustion doctrine, the doctrine of procedural default requires "federal courts generally [to] decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules."[27]  The rationale for this doctrine is that "'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address' the merits of 'those claims in the first instance.'"[28]  The procedural bar requires application of the "independent and adequate state ground doctrine," without which "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court."[29]

---

[23] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014).

[24] *Id.* (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[25] *Id.*

[26] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

[27] *Id.* (second alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).

[28] *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)).

[29] *Coleman*, 501 U.S. at 732.

A prisoner can overcome the procedural bar by demonstrating '"cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'"[30]  "Cause" requires that the petitioner show that some objective external factor impeded efforts to comply with state procedural rules.[31]  "Prejudice" requires the petitioner to demonstrate "not merely a substantial federal claim, such that 'the errors at . . . trial created a possibility of prejudice,' but rather that the constitutional violation 'worked to his actual and substantial disadvantage.'"[32]  Alternatively, the procedural bar may be excused if Petitioner can demonstrate that the failure to consider the procedurally defaulted claim will "result in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence."[33]

### 1.   Ineffective Assistance of Trial Counsel for Agreeing to Nonpublic Jury Selection

Petitioner argues that his trial counsel was ineffective for agreeing with the district court that the public should not be present during jury selection.  This particular ineffective-assistance issue was not raised in his K.S.A. § 60-1507 petition before the district court.  Petitioner raised it for the first time in a supplemental pro se brief in support of his habeas appeal to the KCOA. The KCOA explicitly declined to consider it (the only new issue before it) because, under Kansas law, an issue that is not raised before the trial court cannot be considered for the first time on appeal, with few limited exceptions.[34]

---

[30] *Davila*, 137 S. Ct. at 2064–65 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).

[31] *Spears v. Mullin*, 343 F.3d 1215, 1255 (10th Cir. 2003) (citing *Coleman*, 501 U.S. at 750).

[32] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[33] *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (quoting *Coleman*, 501 U.S. at 753) (citations omitted).

[34] *Roeder II*, 444 P.3d 379 (Table), 2019 WL 3242198, at *2 (Kan. Ct. App. July 19, 2019) (citing *State v. Kelly*, 318 P.3d 987, 993 (Kan. 2014)).

Respondent argues that this claim is procedurally barred because Petitioner failed to comply with the State's procedural rule that an issue is waived on appeal if it is not raised first in the district court.  Petitioner responds that Kansas's waiver rule is not an "independent and adequate state procedural rule" sufficient to bar federal habeas review because the KCOA cited as authority a case that did not involve a § 60-1507 appeal.[35]  To be an "adequate" procedural ground, a state rule must be "firmly established and regularly followed."[36]  Kansas's waiver rule, and its limited exceptions, are firmly established and regularly followed in all Kansas cases— civil, criminal, and habeas cases alike.[37]  This includes ineffective-assistance- of-counsel claims that were not raised before the district court on a § 60-1507 petition.[38]  The fact that the specific case cited in support of the waiver rule by the KCOA was not decided in the habeas context does not mean the rule fails the independent and adequate state procedural rule inquiry.  The same rule applies in habeas cases.  Here, the KCOA explicitly relied on a separate, adequate, and independent state law ground for rejecting Petitioner's ineffective-assistance claim based on nonpublic jury selection.

---

[35] *See Kelly*, 318 P.3d at 993 (applying waiver rule in the context of a criminal direct appeal).

[36] *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

[37] *See, e.g.*, *Trotter v. State*, 200 P.3d 1236, 1245–46 (Kan. 2009) (discussing general rule that "issues not raised before a district court, including constitutional grounds for reversal, cannot be raised for the first time on appeal," and exceptions, in the context of a § 60-1507 motion); *Kelly*, 318 P.3d at 993 (applying rule in the context criminal direct appeal); *Pierce v. Bd. of Cnty. Comm'rs of Leavenworth Cnty.*, 434 P.2d 858, 863–64 (Kan. 1967) (stating general rule in the context of a civil foreclosure action and listing exceptions to the general rule); *Matter of Adoption of Baby Girl G.*, 466 P.3d 1207, 1210 (Kan. 2020), *cert. denied sub nom. P. F. v. J. S.*, 141 S. Ct. 1464 (2021) (applying rule in context of appeal from a motion to terminate parental rights).

[38] *Trotter*, 200 P.3d at 128 ("We have rarely found an exception to the general rule that an ineffective assistance of counsel claim should be first considered by the district court, but did so on at least one occasion in *Laymon v. State*, 280 Kan. 430, 444, 122 P.3d 326 (2005), under circumstances we recently labeled 'extraordinary.'"); *State v. Levy*, 253 P.3d 341, 348 (Kan. 2011) ("[T]he rationale for this limitation is a recognition that the trial court is best equipped to deal with the analysis required for such claims because it observed counsel's performance and competence first-hand and can apply that knowledge to the facts."); *see also Walker v. Martin*, 562 U.S. 307, 320 (2011) ("A discretionary rule ought not be disregarded automatically upon a showing of seeming inconsistencies.  Discretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." (footnote and citation omitted)).

Petitioner next argues that the KCOA should have considered this claim notwithstanding his waiver because it was supported by "the motion and the files and records of the case,"[39] and the KCOA was supposed to conduct a de novo review of the state court record.  Petitioner misinterprets the Kansas statute and the strict federal rules that apply to this Court's review of his claims.  The Court is not required to take up any potential claim raised by Petitioner that may be supported by the state court record.  As stated, Kansas law clearly and consistently requires arguments to be raised with the district court first in order to be considered on appeal, with limited exceptions that the KCOA found do not apply here.  And when the state court declines to consider the merits of a habeas claim under an independent and adequate state law rule, this Court is procedurally barred from considering that claim.  Petitioner's interpretation of § 60-1507 would eviscerate these authorities, allowing review of any claim that is potentially supported by the record below.  That is not the law.

Thus, because this ineffective-assistance claim was not raised before the district court, it is procedurally barred unless Petitioner can show cause and prejudice, or that a miscarriage of justice would occur if the Court did not excuse the procedural bar.  Petitioner does not explicitly invoke cause and prejudice, but his initial petition indicates that his appointed counsel declined to raise this issue before the district court or the KCOA, which is why he submitted it in a supplemental pro se appellate brief.  Typically, attorney error cannot establish cause to excuse a procedural bar; however, there is a narrow exception—"ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time

---

[39] *See* K.S.A. § 60-1507(b).

during state collateral proceedings."[40]  The prisoner must show that the claim should have been

raised, that it was ineffective under *Strickland v. Washington*,[41] and "that the underlying

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner

must demonstrate that the claim has some merit."[42]

In Kansas, ineffective-assistance-of-counsel claims ordinarily should not be raised for the

first time on direct appeal, so the *Martinez* rule may apply.[43]  But Petitioner cannot show that his

postconviction counsel's failure to raise this issue on collateral review meets the standard in

*Strickland*, or that the underlying ineffective-assistance claim is substantial.  *Strickland* requires

Petitioner to show that (1) his counsel's performance fell below an objective standard of

reasonableness; and (2) counsel's performance prejudiced his defense.[44]  The Court's review

under the first prong of this test is "highly deferential: 'counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment.'"[45]  To be deficient, counsel's performance "must have been completely

unreasonable, not merely wrong."[46]  "[S]trategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable."[47]  Under the prejudice

prong, Petitioner must demonstrate "that but for counsel's errors, there is a reasonable

---

[40] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022) (citing *Martinez v. Ryan*, 566 U.S. 1, 9, 16 (2012)).

[41] 466 U.S. 668 (1984).

[42] *Martinez*, 566 U.S. at 14.

[43] *Bogguess v. State*, 395 P.3d 447, 452–53 (Kan. 2017).

[44] 466 at 687–88.

[45] *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010) (quoting *Strickland*, 466 U.S. at 690).

[46] *Id.* (quoting *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999)).

[47] *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (alteration in original) (quoting *Strickland*, 466 U.S. at 690).

probability 'the result of the proceeding would have been different.'"[48]

Petitioner cannot show that his postconviction counsel's failure to raise this issue on collateral review meets the standard in *Strickland*, or that the underlying ineffective-assistance claim is substantial.  Before his trial, Petitioner extensively litigated the issue of pretrial publicity, arguing that he was entitled to a change of venue based on the history of public conflict and controversy surrounding the case and Dr. Tiller's abortion practice in Wichita, Kansas.[49]  He argued on direct appeal that pretrial publicity of these matters violated the Sixth Amendment by denying him an unbiased jury.[50]  The district court denied Petitioner's motion to change venue and the Kansas Supreme Court affirmed that ruling.[51]  In considering the relevant factors applicable to the change of venue motion, the Kansas Supreme Court noted:

> [T]he record reveals that the district court exercised a great deal of care in selecting the jury.  On January 6, 2010, approximately 140 jurors were summoned to court to complete the questionnaire.  On January 11, 2010, at the request of the State and defense, the district court issued an order closing jury voir dire "to [e]nsure the defendant a fair and impartial jury to decide this trial."  Further, based on the answers given by the potential jurors in the questionnaires, the court granted the State and defense's request for "individual voir dire of each juror to explore any challenges for cause, outside of the presence of [the] entire venire, so that any individual answers [would not] taint the entire panel."  As previously noted, the court impaneled a jury from the first group of 61 persons.[52]

To be sure, Petitioner has a Sixth Amendment right to a public trial, which includes jury selection, with certain exceptions.[53]  For example, "the right to an open trial may give way in

---

[48] *Hooks*, 606 F.3d at 724 (quoting *Strickland*, 466 U.S. at 694).

[49] *Roeder I*, 336 P.3d 831, 840 (Kan. 2014).

[50] *Id.*

[51] *Id.*

[52] *Id.* at 842.

[53] *Presley v. Georgia*, 558 U.S. 209, 213 (2010).

Case 5:20-cv-03275-JAR   Document 37   Filed 08/05/22   Page 12 of 32

certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information."[54]  But it is clear from the state court record that Petitioner's trial attorney likely waived his right to public jury selection. Not only did trial counsel fail to object to the district court's decision to close the courtroom during voir dire, but the district court acted at the joint request of the parties in order to address Petitioner's other challenge that pretrial publicity could prejudice members of the jury pool. Defense counsel may waive the right to a public trial on behalf of the defendant,[55] and given the pretrial publicity concerns in this case, Petitioner cannot show that trial counsel's strategic decision to do so in order to promote Petitioner's right to a fair and impartial jury fell below an objective standard of reasonableness.

Similarly, Petitioner cannot demonstrate that his postconviction counsel violated *Strickland* by failing to raise this issue.  Given the strong evidence of waiver, and the fact that trial and appellate counsel did not challenge the nonpublic jury selection on direct appeal, it was not completely unreasonable for postconviction counsel to decide not to include this challenge in the § 60-1507 petition.  Moreover, Petitioner cannot show that the outcome would have been different if he had raised the issue given the evidence of waiver.  Therefore, Petitioner has not shown cause and prejudice for his procedural default.

Finally, Petitioner argues that his procedural default should be excused because he is actually innocent, leading to a miscarriage of justice if this issue is not considered on the merits.

---

[54] *Id.* (alteration omitted) (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).

[55] *Singer v. United States*, 380 U.S. 24, 35 (1965); *see also State v. Reed*, 293 P.3d 815 (Table), 2013 WL 451900, at *11–12 (Kan. Ct. App. Feb. 1, 2013), *aff'd in part, rev'd in part on other grounds,* 352 P.3d 530 (Kan. 2015).

In order to invoke this exception to procedural bar, Petitioner must make a credible showing of actual innocence, which requires him to

> "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial."  This new evidence "must be sufficient to 'show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence.'"[56]

Petitioner has not and does not challenge the underlying facts that gave rise to his convictions. He has presented no new evidence that was not presented at trial to support such a contention. Instead, his innocence claim is tied to his continued claim that the necessity defense applies as a matter of law.  As the Court discusses in Part III.B.2, Petitioner has not demonstrated that his claims of ineffective assistance of counsel related to his necessity defense have merit, and the Kansas Supreme Court rejected Petitioner's direct appeal on the merits of the necessity defense. Thus, the miscarriage-of-justice exception to procedural bar does not apply here.

## 2.    Emergency Motion Regarding Standing

Petitioner requests a "stay of lethal execution on behalf of unborn and partially born individuals under sentence of death" in the final claim listed in his petition.[57]  Petitioner similarly sought this relief along with his § 60-1507 motion and appeal, but the claim was rejected by the state courts as outside the scope § 60-1507.[58]  The KCOA explained that the statute only permits a prisoner to challenge his own sentence in the court that imposed that sentence; he may not challenge someone else's sentence, even if the issues are similar.[59]  Respondent argues that

---

[56] *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) (quoting *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007)).

[57] Doc. 33 at 46; *see* Doc. 1 at 10.

[58] *Roeder II*, 444 P.3d 379 (Table), 2019 WL 3242198, at *8–9 (Kan. Ct. App. July 19, 2019).

[59] *Id.*

because the state courts denied this claim on an adequate and independent state law ground, it is

procedurally barred.  The Court agrees.  The KCOA dismissed this claim because it fell outside

the scope of K.S.A. § 60-1507, which only permits a prisoner in state custody to move the court

for his own release, an individual remedy.  This rule is firmly established.  Petitioner has not

identified any case where Kansas courts have permitted a prisoner to move for relief on behalf of

another person not in custody of the State under § 60-1507, nor has the Court found such

authority in its independent research.  Because this claim was dismissed under an adequate and

independent state law rule, it is procedurally barred.  Petitioner provides no argument or

evidence of cause and prejudice for his failure to follow the state courts' rule, and the Court

rejects any miscarriage of justice exception for the reasons already explained on the jury

selection issue.

       Even if Petitioner's claim was not procedurally barred, it must be dismissed as outside

the scope of the federal habeas statute.  28 U.S.C. § 2254 is available only for release of a

prisoner who is in custody in violation of the Constitution or other federal laws.[60]  Setting aside

the issue of next friend standing, the statute only provides relief for persons "in custody."  For

this reason, Judge Crow previously denied Petitioner's emergency motion for stay of execution,

and denied Petitioner's motion to reconsider that Order.[61]  This Court declines to reconsider yet

again the previous dismissals of this claim as outside the purview of habeas relief under state and

federal law.

---

[60] 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a
State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United
States*." (emphasis added)).

[61] Docs. 10, 23.

B.      **Merits Analysis on Remaining Claims**

1.      **Request for an Evidentiary Hearing**

Petitioner requests an evidentiary hearing.  But his remaining claims arise under § 2254(d)(1) because they were adjudicated on the merits in state court and are based on Petitioner's contention that the state court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  Federal habeas review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits."[62]  Therefore, Petitioner's motion for an evidentiary hearing on these remaining claims is denied.

2.      **First Appearance**

Petitioner argues that he was denied his right to be present at his first appearance when he appeared by videoconference.  He also claims he was denied his right to counsel because an attorney had not yet been appointed for him at the time of his first appearance.  The KCOA found that Petitioner's constitutional challenges failed because there were no facts in the record to suggest he was denied the right to confront witnesses or the right to due process by appearing by videoconference for his first appearance.  The KCOA further found no constitutional claim that he was denied his Sixth Amendment right to counsel because the first appearance was not a critical stage of the proceeding, and his lack of counsel caused no prejudice.

Under Kansas law, "when an arrest is made in the county where the crime charged is alleged to have been committed, the person arrested shall be taken without unnecessary delay before a magistrate of the court from which the warrant was issued."[63]  The purpose of the first

---

[62] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[63] K.S.A. § 22-2901(1).

appearance is "so a neutral judge can provide the arrestee with notice of the charges filed and the constitutional rights to which the arrestee is entitled."[64]  Petitioner's first appearance before the Sedgwick County District Court was on June 2, 2009, at which time the judge informed him of the charges filed against him in the Complaint filed that day.[65]  He was further informed of his right to counsel to assist him with his defense, and that an attorney would be appointed if he could not afford one.  The court ordered Petitioner to appear next on June 16, 2009, and denied an appearance bond.  Petitioner did not enter a plea at this time.  There is no transcript in the state court record of this proceeding.

On the same day as his first appearance, Petitioner completed a financial affidavit and the court appointed Charles Osburn of the Public Defender's Officer to represent Petitioner.[66]  The following day, Mr. Osburn moved the court for an appearance bond.[67]  On June 4, the court held a hearing on the motion and set an appearance bond of $5 million with surety.[68]  On June 10, 2009, after a hearing on the State's motion to modify bond, the court found a "change in circumstances," and increased the appearance bond to $10 million to be paid in cash.[69]  Later, on July 28, 2009, Petitioner was bound over on the felony charges against him at a preliminary hearing, where Petitioner appeared in person and through his counsel, Mr. Osburn.[70]

### a.    Right to be Present

Petitioner argues that his first appearance was a "critical proceeding" to which his right to

---

[64] *Roeder II*, 2019 WL 3242198, at *3 (citing *State v. Crouch & Reeder*, 641 P.2d 394, 396 (Kan. 1982)).

[65] *State v. Roeder*, No. 09CR1462, vol. 1, Journal Entry—Felony Case First Appearance (June 2, 2009).

[66] *Id.*, Financial Affidavit (June 2, 2009).

[67] *Id.*, Mtn. for Appearance Bond (June 3, 2009).

[68] *Id.*, Minute Sheet (June 4, 2009).

[69] *Id.*, Minute Sheet (June 10, 2009); Tr. Mtn. to Reconsider Bond (June 10, 2009).

[70] *Id.*, Journal Entry (July 29, 2009); Tr. Preliminary Hr'g (July 28, 2009).

be present attached.  Because he did not appear physically, but instead by videoconference, he contends that his right to be present was violated.  Respondent argues that there is no clearly established federal constitutional right to be physically present at a first appearance.  Moreover, Respondent contends that Petitioner's right to be present was satisfied by using the videoconference technology.

This Court must determine if the KCOA's decision that Petitioner was not denied his federal constitutional right to be present at his first appearance was contrary to, or an unreasonable application of federal law.  The Supreme Court explains that "[t]he constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him."[71]  Under the Due Process Clause, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure."[72]  But "this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'"[73]  Petitioner contends that his appearance by videoconference prejudiced him by making him appear to be dangerous on national television, setting the stage for his bond to be denied, which caused a "snowball effect" of subsequent, excessive, and unfair bond amounts, and which "set the stage for a lengthy and gratuitous pattern of legal indifference for petitioner's rights."[74]

As an initial matter, the Court notes that the record contains no indication that Petitioner

---

[71] *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (citing *Illinois v. Allen*, 397 U.S. 337 (1970)).

[72] *United States v. Gomez*, 67 F.3d 1515, 1527–28 (10th Cir. 1995) (alteration omitted) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

[73] *Stincer*, 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106–07 (1934)).

[74] Doc. 33 at 17.

appeared by videoconference at his first appearance.  As the KCOA noted, the journal entry from this hearing does not indicate how he appeared, or whether he was informed of his right to appear physically and not by videoconference.[75]  There is no transcript of the first appearance that is part of the state court record.[76]

Assuming that Petitioner appeared by videoconference, the KCOA did not unreasonably apply federal constitutional law to the facts of Petitioner's case.  First, the Court notes that this case is not analogous to typical cases considering the right to be present, where a defendant is not present at all and the dispositive question is whether the proceeding was "critical."[77]  Unlike a conference about an administrative issue, the entire purpose of the first appearance is to inform the defendant of the charges against him and apprise him of his rights.  The question before the KCOA was whether participation by videoconference satisfied Petitioner's constitutional right to be present.  Petitioner does not contest that he was informed of his rights, or that he could meaningfully participate or object to the bond determination at the first appearance.  He does not contend that he was unable to confront witnesses.  Petitioner's only constitutional claim is that he did not receive a fair bond hearing as a result of his appearance by videoconference because he appeared dangerous, causing his bond to first be denied and then set at an unreasonably high amount.

The KCOA considered and rejected Petitioner's prejudice argument because he did not argue, nor were there facts to support, his claim that his appearance by videoconference deprived

---

[75] *State v. Roeder*, No. 09CR1462, vol. 1, Journal Entry—Felony Case First Appearance (June 2, 2009).

[76] According to the KCOA, Petitioner attached an unofficial transcript to his appellate brief that indicates he appeared "in person."  444 P.3d 379 (Table), 2019 WL 3242198, at *4 (Kan. Ct. App. July 19, 2019).

[77] *See, e.g.*, *Stincer*, 482 U.S. at 745–46 (considering the defendant's absence from a competency hearing); *United States v. Beierle*, 810 F.3d 1193, 1199 (10th Cir. 2016) (considering the defendant's absence from jury instruction conference).

him of the right to a fair and just hearing.  The record does not support Petitioner's assertion that his appearance by videoconference impacted the district court's bond determinations.  The day after Petitioner's first appearance, his appointed counsel moved for an appearance bond and bond was set after a hearing on June 4.  Petitioner did not appear at that hearing in person or by videoconference; his attorney appeared on his behalf.  The State eventually moved for a higher bond amount due to new information—statements Petitioner had made to the press after his arrest that the State argued supported a higher bond amount.[78]  The district court was persuaded by the State's arguments and granted the motion.  Petitioner did not appear at that hearing in person or by videoconference; his attorney appeared on his behalf.  None of the court's orders or minute entries reference Petitioner's appearance by videoconference at the first appearance as a factor in the bond decisions.

The KCOA's determination that Petitioner did not argue or establish that his physical presence would have affected the outcome of the hearing was not contrary to, nor an unreasonable application of federal law.  As the Tenth Circuit has explained, the Supreme Court's right to presence jurisprudence "focus[es] on whether the defendant could have assisted at the proceeding . . . from which the defendant was absent."[79]  It was not unreasonable for the KCOA to determine that no constitutional violation occurred because Petitioner did not demonstrate his lack of physical presence deprived him of a just and fair bond hearing.

### b.    Right to Counsel

Petitioner next argues that he was deprived of his Sixth Amendment right to counsel when he appeared unrepresented at the first appearance and the court declined to set an

---

[78] *State v. Roeder*, No. 09CR1462, Tr. Mot. To Recon. Bond, at 3–4 (June 12, 2009).

[79] *Beierle*, 810 F.3d at 1199.

appearance bond.  Under the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[80]  Two issues impact whether counsel must be present in this case: when the right to counsel attaches and whether counsel must be present at a particular proceeding.  The Supreme Court has explained the distinction as follows:

> Attachment occurs when the government has used the judicial machinery to signal a commitment to prosecute as spelled out in *Brewer* and *Jackson*.  Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any "critical stage" of the postattachment proceedings; what makes a stage critical is what shows the need for counsel's presence.  Thus, counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself.[81]

Importantly for this case, "[t]he question whether arraignment signals the initiation of adversary judicial proceedings . . . is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel."[82]  The Supreme Court has made clear that the right to counsel attaches at "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction."[83]  Thus, there is no dispute that the right to counsel attached at Petitioner's first appearance.

But the Court in *Rothgery* did not decide "the scope of an individual's postattachment right to the presence of counsel," which is the issue presented by Petitioner.[84]  On this question, the Supreme Court has not held that an initial appearance such as the one in this case was a

---

[80] U.S. Const. amend. VI.

[81] *Rothgery v. Gillespie County*, 554 U.S. 191, 211–12 (2008) (footnotes omitted).

[82] *Id.* at 212 (alteration in original) (quoting *Michigan v. Jackson*, 475 U.S. 625, 630 n.3 (1986), *overruled on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009)).

[83] *Id.* at 213.

[84] *Id.* at 212 n.15.

"critical stage" that required the presence of counsel.[85]  A pretrial arraignment is "critical" if certain rights may be sacrificed or lost, but there is no indication that any right was sacrificed or lost here.[86]  Petitioner did not waive any rights, he did not plead guilty, he did not make incriminating statements, and he was not required to plead any defenses.  Thus, it was not contrary to federal law for the KCOA to hold that the first appearance in this case was not a critical stage of his criminal proceeding that required the presence of counsel.  The record also reflects that Petitioner was appointed counsel within a reasonable time—one day—of his right to counsel attaching.

Moreover, the KCOA determined that there was no prejudice associated with Petitioner's lack of counsel at the first appearance.  The KCOA's determination was neither contrary to nor an unreasonable application of federal law to the facts of this case.  There is no evidence to support structural error requiring automatic reversal—that "the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding."[87]  At the first appearance, Petitioner was informed of the charges against him and of his right to counsel.  He did not make any statements that were later used against him, nor was he required to enter a plea or assert any defenses.[88]  The same day as the first appearance, Petitioner completed a financial affidavit and the court appointed a public defender to represent him.  His appointed attorney filed a motion for an appearance bond the following day and appeared on behalf of Petitioner at the bond hearing.

---

[85] *Id.* at 217 (J. Alito, concurring) ("I interpret the Sixth Amendment to require the appointment of counsel only after the defendant's prosecution has begun, and then only as necessary to guarantee the defendant effective assistance at trial.").

[86] *See Hamilton v. Alabama*, 368 U.S. 52, 53–54 (1961) (finding arraignment under Alabama law critical because certain defenses must be pleaded at that time or lost).

[87] *Acosta v. Raemisch*, 877 F.3d 918, 934–35 (10th Cir. 2017) (quoting *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)).

[88] *See Brewer v. Williams*, 430 U.S. 387, 398–99 (1977) (finding right to counsel violated during detective interview with the defendant after right attached, during which the defendant made incriminating statements).

Petitioner was able to request and obtain an appearance bond within 24 hours of his first appearance.

These facts also support a harmless error analysis.[89]  To show that the constitutional error was not harmless, Petitioner must demonstrate that it "had a 'substantial and injurious effect or influence' on the verdict."[90]  There is no indication in the state court record that counsel's absence from the first appearance had any impact on the rest of the proceedings, much less the verdict.  Therefore, the KCOA's determination that Petitioner failed to show that he was prejudiced by the lack of representation at his first appearance was neither contrary to, nor an unreasonable application of federal law.  Thus, petitioner's request for habeas relief on the ground that he was denied his right to counsel at his first appearance is without merit.

### 2.      Ineffective Assistance Claims Relating to Necessity Defense and Lesser Included Offense Instruction

#### a.      Background

Before trial, the State sought to preclude Petitioner from asserting a necessity defense, and the trial court granted its motion.  Petitioner's theory under this defense was that his crimes were justified in order to prevent Dr. Tiller from performing abortions.  On direct appeal, the Kansas Supreme Court upheld the trial court's ruling precluding Petitioner from asserting the necessity defense at trial.[91]  The Kansas Supreme Court relied on its own precedent rejecting the necessity defense in cases involving criminal trespass charges against individuals protesting

---

[89] This case is not the rare one where a presumption of prejudice applies instead of the harmless error rule. The exception under *United States v. Cronic*, would apply if the defendant was completely denied counsel during a critical stage of trial.  466 U.S. 648, 659 & n.25 (1984).  As already explained, Petitioner's first appearance in this case was not a critical stage of trial at which counsel's presence was required.  Nor are any of the other circumstances cited in the *Cronic* decision present here that would create a presumption of prejudice.  *See id.* at 659–60.

[90] *Acosta*, 877 F.3d at 935 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

[91] *Roeder I*, 336 P.3d 831, 843–46 (Kan. 2014).

outside abortion clinics, and held that even if Kansas recognizes a necessity defense, it does not apply to the facts of this case.[92]

The Kansas Supreme Court examined the Tenth Circuit's formulation of the necessity defense, which Petitioner relied on, and found that the defense did not apply to the facts of this case.[93]  That formulation requires a showing:

> (1) that the defendant was faced with a choice of evils and chose the lesser evil, (2) the defendant acted to prevent imminent harm, (3) the defendant reasonably anticipated a direct causal relationship between his conduct and the harm to be averted, and (4) the defendant had no legal alternatives to violating the law.[94]

The court determined that the defense could not apply here because Petitioner did not choose "the lesser of two evils" when he killed Dr. Tiller, and because he did not act to prevent "imminent harm."[95]

Petitioner also requested a jury instruction at trial on the lesser included offense of voluntary manslaughter based on imperfect defense of others.  He argued that he had an honest belief that he must kill Dr. Tiller to protect unborn children from imminent harm due to abortions scheduled the following day.  The district court denied Petitioner's request for this instruction, finding that Dr. Tiller was not engaging in illegal conduct at the time of the murder, which occurred at Dr. Tiller's church, so there was no "imminent" danger to others.[96]  The district court further found that Petitioner did not hold an unreasonable but honest belief under an objective

---

[92] *Id.* (first citing *City of Wichita v. Tilson*, 855 P.2d 911, 913 (Kan. 1993); and then citing *City of Wichita v. Holick*, No. 95,340, 2007 WL 518988, at *3 (Kan. Ct. App. Feb. 16, 2007)).

[93] *Id.* at 845.

[94] *Id.* (quoting *Holick*, 2007 WL 518988, at *3 (citing *United States v. Turner*, 44 F.3d 900, 902 (10th Cir. 1995)).

[95] *Id.* at 844–45.

[96] *Id.* at 846 (discussing district court's ruling); *see also State v. Roeder*, No. 09CR1462, Tr. Mtns. Hr'g at 9–26 (Jan. 8, 2010).

standard that circumstances existed that justified deadly force.[97]  The Kansas Supreme Court affirmed the district court's ruling on direct appeal.[98]  The court determined that even if it was true as a factual matter that Dr. Tiller would be performing abortions the following day, it would not support the imperfect defense of others instruction because for that instruction to apply, Petitioner "had to be defending against Dr. Tiller's 'imminent use of unlawful force' against a third person."[99]  The court explained that there was no use of force by Dr. Tiller that was imminent in the church foyer on Sunday, May 31, 2009, and there was no proof that Petitioner was defending against "unlawful force" because there was no evidence Dr. Tiller would be performing illegal abortions the following day.[100]  The Kansas Supreme Court also noted that Petitioner had formed his belief that he needed to kill Dr. Tiller more than a decade prior to any investigation into Dr. Tiller's compliance with abortion rules and regulations, and that Petitioner testified at trial that he intended to stop all abortions, including those that were legal at that time.[101]

### b.    Standard

On collateral review, Petitioner raises two ineffective-assistance-of-counsel claims relating to his proffered necessity defense and jury instruction.  First, Petitioner asserts that his trial counsel was ineffective for failing to call a coroner as an expert witness who could testify that abortion results in homicide.  Second, Petitioner urges that his appellate counsel was ineffective for conceding that an abortion scheduled to be performed six months after Dr. Tiller's

---

[97] *See Roeder I*, 336 P.3d at 846 (quoting Kan. PIK Crim. 3d § 56.05).

[98] *Id.* at 849–50.

[99] *Id.* at 850 (quoting K.S.A. § 21-3211(a)).

[100] *Id.*

[101] *Id.*

murder was not "imminent" for purposes of the necessity defense and the voluntary manslaughter based on imperfect defense of others instruction.  The KCOA rejected both ineffective-assistance claims, finding neither trial counsel nor appellate counsel deficient in failing to raise these arguments.

As discussed earlier in this opinion, to demonstrate ineffective assistance of counsel, Petitioner must demonstrate under *Strickland* that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) counsel's performance prejudiced his defense.[102] Failure to satisfy either prong of the *Strickland* test is dispositive, and the Court can consider them in any order.[103]  When reviewing an ineffective-assistance claim under § 2254(d), the Court applies a "doubly deferential" standard: it must determine whether the relevant state court decision was unreasonable in concluding that counsel's performance did not meet the deferential *Strickland* test.[104]  Under § 2254(d), which applies to these claims because they were adjudicated on the merits in the state court proceedings, "the question is not whether counsel's actions were reasonable.  The question is whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard."[105]  Here, the relevant state court decision as to Petitioner's ineffective-assistance claims is the KCOA decision denying state habeas relief under § 60-1507.[106]  With this framework in mind, the Court turns to Petitioner's specific ineffective-assistance claims.

---

[102] 466 U.S. 668, 687–88 (1984).

[103] *Littlejohn v. Royal*, 875 F.3d 548, 552 (10th Cir. 2017) (quoting *Strickland*, 466 U.S. at 697).

[104] *Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

[105] *Grant v. Royal*, 886 F.3d 874, 903–04 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

[106] *Roeder II*, 444 P.3d 379 (Table), 2019 WL 3242198 (Kan. Ct. App. July 19, 2019).

c.        **Trial Counsel**

First, Petitioner argues that his trial counsel was ineffective for failing to call a coroner as an expert witness to testify that abortion is murder.  According to Petitioner, had trial counsel called a coroner as an expert witness on this topic, he could have established the facts necessary to invoke a necessity defense and avoid conviction, or he could have established that a jury instruction on the lesser included offense of voluntary manslaughter based on the imperfect defense of others should have been given.

The KCOA's decision that trial counsel's performance did not meet the deferential *Strickland* test was not unreasonable.  The KCOA considered the procedural history of the necessity defense and the Kansas Supreme Court's decision on direct appeal upholding the district court's rulings not to instruct on the necessity defense or the lesser included offense.[107] The KCOA held that trial counsel's decision not to designate an expert witness to testify about this topic was not unreasonable because of the trial court's pretrial ruling that Petitioner could not pursue the defense or the lesser included offense instruction.[108]  The KCOA's decision rejecting Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of federal law to the facts of this case.

Petitioner contends that a coroner's testimony would have demonstrated the first prong of the necessity defense—that he was faced with a choice of evils and chose the lesser evil.  Again, the KCOA decision was neither contrary to nor an unreasonable application of federal law.  The Kansas Supreme Court relied on its earlier decision in *City of Wichita v. Tilson*, where it explained that "[t]he harm or evil which a defendant, who asserts the necessity defense, seeks to

---

[107] *Id.* at *5–8.

[108] *Id.* at *6–7.

prevent must be a legal harm or evil as opposed to a moral or ethical belief of the individual defendant."[109]  The state courts determined that the evil Petitioner sought to prevent was based on his moral and religious view that abortion is murder, not the "legal view in this state."[110]  The Kansas Supreme Court found that, at most, the *legal* harm that Petitioner was seeking to prevent was Dr. Tiller's violation of certain rules and regulations that applied to abortion providers— misdemeanor violations under Kansas law.[111]  The Kansas Supreme Court found that these facts "unequivocally preclude" application of the necessity defense.[112]

The KCOA recited the Kansas Supreme Court's analysis on direct appeal and found that under these circumstances, trial counsel was not deficient for declining to call a coroner as a witness on issues that had been excluded by the district court.  Likewise, the KCOA recited the Kansas Supreme Court's decision on the imperfect defense of others instruction, and found that in light of this ruling, Petitioner's counsel was not deficient for failing to call a coroner as an expert witness.  Trial counsel made the strategic decision not to call a witness on these issues that the district court had excluded.  Thus, the KCOA's decision that trial counsel's performance did not meet the deferential *Strickland* test was reasonable.  Petitioner's motion for habeas relief on this ineffective-assistance claim is therefore denied.

### d.    Appellate Counsel

Petitioner next contends that his appellate counsel was ineffective for failing to make certain arguments on the imminence element of the necessity defense and imperfect defense of

---

[109] *Roeder I*, 336 P.3d 831, 844 (Kan. 2014) (quoting *City of Wichita v. Tilson*, 855 P.2d 911, 914 (Kan. 1993)).

[110] *Roeder II*, 2019 WL 3242198, at *6 (quoting *Roeder I*, 336 P.3d at 845).

[111] *Id.* (quoting *Roeder I*, 336 P.3d at 845).

[112] *Roeder I*, 336 P.3d at 846.

others instruction.  On direct appeal, the Kansas Supreme Court considered and rejected the

evidence proffered on imminence as follows:

> Likewise, Roeder fails the second test, *i.e.*, that he acted to prevent
> imminent harm. Roeder acknowledges that Dr. Tiller was not
> going to cause the harm of which he complains until the next day.
> Obviously, there were not going to be any abortions performed at
> the church while the doctor was ushering for a Sunday morning
> service.  Roeder argues that the potential that the doctor would
> perform an abortion some 22 hours after the shooting qualified as
> imminent harm.  We disagree.  The shooting occurred at the
> church because it made the assassination easier to accomplish, not
> because the perceived harm was imminent.  Moreover, Roeder
> testified that he first determined that it would be necessary to kill
> Dr. Tiller in about 1993, that he formulated the plan to kill the
> doctor at his church in 2002, and that he attended the doctor's
> church in 2008 with the intent to kill the doctor before he actually
> effected his plan in May 2009.  That timeline belies the notion that
> Roeder sincerely believed that the harm to be prevented was
> imminent; one does not wait over a decade to prevent an imminent
> harm.[113]

Citing Kansas Supreme Court authority, the court also found that any danger to others was too

remote to support the requested jury instruction because the harm Petitioner sought to prevent

was at best 22 hours away.[114]  The court held that the necessity defense was "not legally

appropriate," and that it "was not a close call."[115]

Petitioner argues that appellate counsel was ineffective because he conceded that six

months would not be considered imminent for purposes of the necessity defense, and because he

did not cite to a Department of Justice memo that Petitioner contends supported a more favorable

construction of imminence.  The KCOA considered and rejected both of these ineffective-

assistance arguments.  First, the KCOA held that there was no legal support for Petitioner's

---

[113] *Id.* at 845–46.

[114] *Id.* at 857.

[115] *Id.*

assertion that a broader definition of imminence, such as the one included in a Department of

Justice ("DOJ") memo he proffered, applied.[116]  The court considered Kansas cases construing

imminence and concluded it was "not without limit.  The danger must be near at hand."[117]  In

two prior Kansas Supreme Court cases, no imminence was found for purposes of the imperfect-

defense-of-others defense when the person sought to be protected was not present at the place of

the murder.[118]  Of course, Kansas courts are bound by Kansas Supreme Court authority under the

principle of stare decisis on issues of state law such as this.[119]  Thus, the KCOA's conclusion that

appellate counsel's performance did not fall below an objective standard of reasonableness by

not raising the imminence definition from the DOJ memo was neither contrary to nor an

unreasonable application of federal law.

           In addition to finding no support for Petitioner's assertion that appellate counsel's

performance fell below an objective standard of reasonableness, the KCOA found no prejudice

in counsel's concession that six months is not imminent.[120]  As the KCOA explained, the Kansas

Supreme Court refused to adopt his counsel's argument that Petitioner's belief that an abortion

scheduled twenty-two hours after the murder would meet the definition of imminent.[121]

Moreover, the court found that Petitioner did not have an honest belief that the harm was

imminent given that he had been planning the murder for more than a decade.[122]  Given these

rulings, the KCOA explained that appellate counsel's concession that six months is not imminent

---

[116] *Roeder II*, 2019 WL 3242198, at *7–8.

[117] *Id.* at *7 (quoting *State v. White*, 161 P.3d 208, Syl. ¶ 9 (Kan. 2007)).

[118] *Id.* (first citing *White*, 161 P.3d at 222; and then citing *State v. Hernandez*, 861 P.2d 814, 819–20 (Kan. 1993)).

[119] *See, e.g.*, *Crist v. Hunan Palace, Inc.*, 89 P.3d 573, 579 (Kan. 2004).

[120] *Roeder II*, 2019 WL 3242198, at *8.

[121] *Id.*

[122] *Id.*

and the failure to cite the DOJ memo would not have changed the outcome of his direct appeal. The KCOA's conclusions are neither contrary to nor an unreasonable application of federal law.

### c.     Supplemental Authority

Petitioner argues in a supplemental filing that the state court rulings precluding him from raising the necessity defense and instructing the jury on voluntary manslaughter should be revisited in light of the Supreme Court's recent decision in *Dobbs v. Jackson Women's Health Organization*.[123]  In *Dobbs*, the Supreme Court held that the United States Constitution does not provide a right to abortion and that the authority to regulate abortion belongs to the states.[124]  The *Dobbs* holding does not impact the KCOA's ruling on Petitioner's ineffective-assistance claims. Abortion within the confines of federal constitutional law was legal in Kansas at the time of Petitioner's crimes in 2009, so long as providers complied with applicable Kansas rules and regulations.[125]  *Dobbs* does not impact that analysis; it merely holds that states may now pass laws prohibiting or regulating abortions.[126]  Some states may choose not to regulate abortion under *Dobbs*, while others may prohibit or heavily regulate the procedure.  Even if abortion eventually becomes illegal in the State of Kansas, such a law would not retroactively inform the *Strickland* analysis that applies to trial counsel's conduct in 2010, or appellate counsel's conduct in 2011.  Under the doubly deferential standard of review that applies to Petitioner's ineffective-assistance-of-counsel claims, which considers the attorney's conduct at the time of the

---

[123] 142 S. Ct. 2228 (2022).

[124] *Id.* at 2242, 2284.

[125] *See Roeder I*, 336 P.3d 831, 844–45 (Kan. 2014).

[126] *Dobbs*, 142 S. Ct. at 2284.

challenged decision and not with the benefit of hindsight,[127] the Court denies Petitioner's motion for collateral relief.

## IV.     Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases requires the federal district court reviewing a habeas petition to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Under U.S.C. § 2253(c)(2), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  A petitioner must demonstrate either that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that issues in the petition are "adequate to deserve encouragement to proceed further."[128]  Moreover, a movant does not need to demonstrate his appeal will succeed to be entitled to a Certificate of Appealability, but must "prove something more than the absence of frivolity or the existence of mere good faith."[129]

For the same reasons explained above, the Court denies a certificate of appealability on the issues raised in Petitioner's habeas petition.  His first ineffective-assistance-of-counsel claim is procedurally defaulted.  His remaining ineffective assistance of counsel claims are plainly meritless, as are his claims challenges his first appearance.  His claim for emergency relief on behalf of others is clearly outside the scope of relief provided under § 2254, and it is procedurally barred because the KCOA found that it was outside the scope of K.S.A. § 60-1507.

---

[127] *See, e.g.*, *Hooks v. Workman*, 689 F.3d 1148, 1189 (10th Cir. 2012) ("We evaluate conduct from counsel's perspective at the time, not in hindsight.").

[128] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

[129] *United States v. Williams*, 410 F. App'x 97, 99 (10th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)).

**IT IS THEREFORE ORDERED BY THE COURT** that Scott Roeder's Petition under

28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) is **denied**.

Petitioner is not entitled to a certificate of appealability.

**IT IS SO ORDERED.**

Dated: August 5, 2022

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE